# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 323 | DATE | 7/27/2004 |
| CASE TITLE | Cathy Brown vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] As stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment [18-1, 20-1] is denied and the Commissioner's motion for summary judgment [19-1] is granted. The Clerk of Court is directed to enter judgment in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Cathy Brown. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 2 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | JUL 28 2004 date docketed | |
| | Notified counsel by telephone. | | | 21 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 7/27/2004 date mailed notice | |
| KF | courtroom deputy's initials | 2004 JUL 27 AM 10:39 | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
JUL 2 8 2004

| | |
|---|---|
| CATHY BROWN,<br><br>　　　Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Acting<br>Commissioner of Social Security<br><br>　　　Defendant. | No. 04 c 0323<br><br>Mag. Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Cathy Brown ("Brown" or "plaintiff"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"), who denied Brown's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 416(I), 423(d), 1381a (2000).[1] Defendant, Barnhart, filed a cross-motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, we deny plaintiff's motion and grant defendant's motion, affirming the decision of the ALJ.

---

[1]Plaintiff's memorandum in support of her motion for summary judgment is not paginated. We will refer to the page with the heading "Memorandum in Support of Plaintiff's Motion [for] Summary Judgment" as page 1. Plaintiff's reply brief to defendant's motion for summary judgment is also not paginated. We will refer to the page incorrectly labeled "Plaintiff's Motion for Summary Judgment and Memorandum in Support" as page 1.



## Procedural History

Brown filed an application for DIB and SSI on July 28, 2001, alleging a disability onset date of June 23, 2001. (R. 17-18). Both claims were denied initially and upon reconsideration. (R. 17). Subsequently, plaintiff requested a hearing, which ALJ Percival Harmon conducted on December 18, 2002. (R. 17). Brown and Vocational Expert ("VE") Frank Mendrick testified at the hearing. (R. 26-27). On December 24, 2002, the ALJ issued an opinion denying Brown's petition for DIB and SSI benefits. (R. 14-24). The Appeals Council denied plaintiff's request for review on December 6, 2003, making ALJ Harmon's decision the final decision of the Commissioner. *See Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001); Reg. § 416.1481.

## Plaintiff's Testimony

Plaintiff was born on February 27, 1953, making her 49 years-old at the time of the hearing and approximately two months shy of her fiftieth birthday when the ALJ issued his opinion. (R. 32). Brown graduated from high school and attended two years of college, but did not earn a degree. (R. 32). She has prior work experience as a records clerk for an insurance company. (R. 33, 56). At the time of the hearing, she was working part-time as a home caretaker. (R. 35). She testified that she currently works 20 hours per week; 8 hours on Tuesdays and Thursdays and 4 hours on Wednesdays. (R. 38). On Tuesdays and Thursdays, Brown has a morning client and an afternoon client. She spends 4 hours with each client. (R. 38).

Plaintiff further testified that to reach her clients' homes, she travels 50 to 75 minutes on public transportation and walks up to eight blocks. (R. 44, 51). Plaintiff

stated she walks slowly and stops frequently, because she becomes very tired. (R. 52-55). Plaintiff's duties as a home caretaker entail cooking, dusting, and generally helping her clients with their hygiene, which includes aiding them in bathing and combing their hair. (R. 36). Brown also assists some of her clients move about the house. For example, some of her clients require assistance moving from their beds to the bathroom. (R. 36). At her current job, plaintiff is able to sit and rest occasionally for at least 10-15 minutes in a 4-hour shift. (R. 43). Sometimes, during those breaks, she is allowed to take brief naps. (R. 45).

At the hearing, plaintiff testified that she lives alone in an apartment and does her own cooking, grocery shopping, and housekeeping. (R. 40). However, she stated that doing household chores makes her tired and she is bothered by dust. (R. 40). Plaintiff also testified that her medication makes her drowsy during the day and impairs her ability to sleep at night. (R. 40-41). Brown stated that sometimes her feet, ankles, and legs swell and ache, especially when she works an 8-hour day. (R. 42-43). She also stated that she suffers from frequent wheezing, congestion in her chest, and chest and stomach pain. (R. 47-48, 50). Plaintiff testified that she could stand for at least 30 minutes at a time, but she would not be able to sit for an hour because during that hour she would need to stand up due to stiffness. (R. 52). Brown thinks she can lift 20 pounds. (R. 52-53). She told the ALJ that her doctor advised her not to do too much standing or lifting, and to elevate her feet at the end of the day for half an hour to an hour. (R. 51, 54). She also stated that about a month before the hearing, she stopped using illegal drugs on her own. (R. 47-48).

3

## Medical Evidence

On June 23, 2001, plaintiff was admitted to Little Company of Mary Hospital ("Little Company") complaining of shortness of breath. (R. 159). Plaintiff was diagnosed with pulmonary edema, hypoxia, acute respiratory failure, cocaine abuse, and hypertension. (R. 160). Plaintiff's lab tests were positive for opiates, benzodiazepine and cocaine, and her pulmonary edema and congestive heart failure were found to be secondary to cocaine abuse. (R. 162). Plaintiff was intubated and placed in the intensive care unit. *Id.* Her medical records from Little Company reflect that she was known to be hypertensive, but was not taking her medications. (R. 166). At discharge on June 27, plaintiff was stable and her blood pressure was controlled. *Id.* She was advised to engage in physical activity as tolerated. (R. 166). On July 6, 2001, plaintiff went to Cook County Hospital for a prescription refill, but did not report any specific medical complaints. (R. 192-93).

On August 15, 2001, Dr. Kevin Lai filled out a respiratory report based on plaintiff's treatment at Little Company in June, 2001. (R. 201-02). Dr. Lai noted that plaintiff had not returned to Little Company since her discharge on June 27, 2001, making it difficult to evaluate her current condition and response to treatment. (R. 202). Dr. Lai diagnosed cardiomyopathy, resolved pulmonary edema, and cocaine and other substance abuse. *Id.* He also noted that plaintiff was able to ambulate without difficulty in the hospital, which included, *inter alia*, sitting, standing, and moving. *Id.*

On August 31, 2001, plaintiff visited the Fantus Health Center at Cook County Hospital for a chest x-ray. (R. 195). The x-ray revealed congestive heart failure and

enlargement of the heart, known as cardiomegaly, but no effusion or pneumonia. *Id.*

On September 28, 2001, at the request of the SSA, Dr. Epner performed a consultative internal medicine examination on plaintiff. (R. 205). Dr. Epner's examination revealed bilateral plus two edema from plaintiff's feet to her knees, but was otherwise normal. He diagnosed congestive heart failure and significant hypertension. (R. 208). He also reported that plaintiff was on multiple medications and her blood pressure was under moderate control. *Id.* On November 8, 2001, plaintiff returned to the Fantus Health Center for a follow-up visit to monitor her hypertension. (R. 191). She did not report any significant medical complaints and the doctor found her hypertension under control. *Id.*

On December 20, 2001, Dr. Robert England reviewed Brown's medical records and completed a physical Residual Functional Capacity ("RFC") Assessment. (R. 209-16). The doctor concluded that Brown could perform light work. (R. 219). Specifically, he found that she could lift up to 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk and sit for up to 6 hours in an 8-hour day and her ability to push and/or pull was unlimited. (R. 210). He did not find any manipulative, visual, communicative, or environmental limitations. However, he did conclude that plaintiff could only occasional climb ramps and stairs and could never climb ropes, ladders, or scaffolds. (R. 211). Another state agency physician affirmed Dr. England's findings on April 3, 2002. (R. 216).

On January 10, 2002, plaintiff returned to Cook County Hospital for a routine exam. (R. 190). The doctor adjusted her medication because he found plus two bilateral edema in her extremities and evidence of chronic heart failure. (R. 190). He

5

also scheduled an echocardiogram, noting that plaintiff's last one in October, 2001 showed mild left ventricle hypertrophy. (R. 190). Plaintiff returned a week later and reported feeling better. (R. 189). She did not complain of chest pain and told the doctor she could walk four to five blocks without experiencing shortness of breath. (R. 189). The doctor noted noncompliance with her blood pressure medication and encouraged plaintiff to comply. (R. 189).

Plaintiff returned to the Fantus Health Clinic on March 7 for a routine check-up. (R. 187). The doctor noted uncontrolled hypertension because plaintiff was not taking her medication. *Id.* He described plaintiff's chronic obstructive pulmonary disease as stable on medication, and instructed plaintiff to return in eight weeks. *Id.* Plaintiff returned on May 2 and reported feeling okay. (R. 219). The doctor described her hypertension as controlled and her asthma was well controlled. (R. 223).

Plaintiff did not have any complaints at her next clinic visit on August 5, 2002. (R. 218). Plaintiff's asthma was still well controlled, and her blood pressure was elevated due to poor compliance with her medications. *Id.* The doctor reviewed plaintiff's medications with her and conducted "patient education regarding low sodium." *Id.*

## Vocational Expert's Testimony

In addition to Brown, VE Mendrick also testified at the hearing. (R. 26). ALJ Harmon posed a number of questions to the VE. First, he asked VE Mendrick to classify the skill level and exertional requirements associated with plaintiff's previous employment, as defined in the Dictionary of Occupational Titles ("the DOT"). (R. 58).

6

Based on plaintiff's testimony that as a records clerk she was required to lift up to 20 pounds and walk up and down stairs three to four times each day, the VE found plaintiff's records clerk position, as she performed it, to be semi-skilled, light work. (R. 58). Based on plaintiff's testimony regarding her duties as a home caretaker, the VE classified that job as unskilled, heavy work. (R. 59). However, the VE noted that if plaintiff's clients did not need assistance with self-care, the position would be classified as either light or medium exertional work. *Id*.

To aid the ALJ in his step 5 analysis, he also posed a series of hypotheticals to the VE based on plaintiff's functional limitations as demonstrated by the evidence before him. Specifically, the ALJ inquired as to whether there were any jobs in the economy that could be performed by a hypothetical person of a plaintiff's age, education, and work experience; who was limited to unskilled, light work; and who was limited to occasional climbing of stairs and ramps; no work on ladders, ropes, scaffolding, or at unprotected heights and around hazardous moving machinery; and could not be exposed to concentrated pulmonary irritants, fumes, dust and strong odors. The VE opined that jobs for such a hypothetical person did exist in significant numbers in the economy. Specifically, such a hypothetical person could work as an officer helper and could perform general assembly or inspection work.

## Standard of Review

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. §405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). We will conduct a "critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* (*quoting Steele*, 290 F.3d at 940.). The ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion," however he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

## Legal Analysis

A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). In determining whether the claimant is disabled, the ALJ must consider the following five-step inquiry set forth in 20 C.F.R. § 416.1920(a)-(f): "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of

performing any work in the national economy." *Dixon*, 270 F.3d at 1176. If at any step in the inquiry the ALJ determines that the claimant is not disabled, the analysis ends. *Goodson v. Barnhart*, 217 F.Supp.2d 892, 900 (N.D.Ill. 2002). The claimant has the burden of establishing a disability at steps 1 through 4. *Zurawski v. Halter*, 245 F. 3d 881, 886 (7th Cir. 2001). However, if the claimant reaches step 5, "the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy." *Id.*

Steps 1 through 3 of the ALJ's analysis are not contested. At step 1, ALJ Harmon found that plaintiff had not engaged in any substantial work as defined by 20 C.F.R. §404.1572 for the time period relevant to this case. At step 2, the ALJ concluded plaintiff suffered from the severe impairments of hypertension, pulmonary edema, a history of congestive heart failure, asthma, and cardiomegalya. At step 3, he opined that these impairments failed to "meet or medically equal [any of those listed] in Appendix 1, Subpart P, Regulations No. 4." 20 C.F.R. §404.1520(e).

At step 4, the ALJ concluded that Brown had the RFC to perform a significant range of unskilled, light work. He also opined that she could not perform her past relevant work and, therefore, proceeded to step 5 in the analysis. At the final step, the ALJ found that plaintiff could not perform the full range of light work because she could not work around heights, scaffolds and concentrated exposure to pulmonary irritants, and could only occasionally work with stairs, ramps and perform stooping motions. However, based on those limitations, the ALJ concluded plaintiff could still perform a wide range of unskilled light work and that "there [were] a significant number of jobs in

the national economy that she could perform." Examples included officer helper, bench assembler and inspector.

Through very cursory briefing[2], plaintiff makes three unpersuasive arguments in support of her request that we either reverse the decision of the ALJ and find plaintiff disabled, or remand her case back to the ALJ for further proceedings. As discussed *infra*, each of plaintiff's arguments lack merit, and in some cases factual support. Consequently, we affirm the decision of the ALJ.

**ALJ's RFC Determination**

First, plaintiff takes issue with the ALJ's RFC determination, arguing his finding that plaintiff could perform a significant range of unskilled, light work is contrary to the medical evidence in the record. Plaintiff contends that the evidence in the administrative record requires a finding that Brown is limited to no more than sedentary work. Specifically, without citing to the record, plaintiff asserts that because she has documented bilateral edema from her feet to her knees, she is precluded from performing any work beyond the sedentary exertional level. Brown's position is contrary to the medical evidence and her own testimony.

---

[2]Plaintiff's memorandum in support of her motion for summary judgment is less than six pages and fails to provide evidentiary or case law support for a number of propositions contained therein. Even more disturbing, the text of her reply brief is less than two pages and mischaracterizes defendant's motion for summary judgment. For example, in her reply, plaintiff states "[d]efendant argues that despite findings of edema, no doctor adjusted her medication to account for this symptom of congestive heart failure." *Pl.'s Reply* at 1 (citing *Def.'s Mem.* at 10). Defendant actually stated "[p]laintiff had edema of her lower extremities on exam, but none after her doctor adjusted her medication to account for this symptom of congestive heart failure" *Def.'s Mem.* at 10 (internal citations omitted).

10

Brown argues that her bilateral edema requires her to "elevate her feet and stay off of her legs significant periods each day." *Pl.'s Memo.* at 3-4. However, she does not cite and we cannot find any evidence in the administrative record to support this statement. Plaintiff's medical records do not contain instructions from any doctor suggesting that she stay off her feet or legs for any period of time. Although her treating and examining doctors do note bilateral edema, none imposed any work restrictions based on that diagnosis.

Similarly, plaintiff's own testimony does not support her assertion. At the hearing, Brown's counsel inquired as to whether any doctors ever said anything about elevating her feet. Plaintiff responded "[the doctor] told me at the end of the day to . . . kind of elevate them for at least a half hour to an hour." (R. 54). Plaintiff never testified that she was instructed to "elevate her feet and stay off of her legs significant periods each day." The need to elevate her feet for a half hour to an hour *at the end of the day* would not preclude light work and limit her to no more than sedentary work.

Plaintiff also argues that because the ALJ acknowledged that she could not perform her current job as a home caretaker, which the VE classified at the heavy exertional level, on a full-time basis, she is therefore limited to sedentary work. *Pl.'s Mem.* at 4. The reasoning behind this argument eludes us. An ALJ's finding that a claimant cannot perform full-time work at the heavy exertional level in no way precludes a finding that she can perform full-time work at the light exertional level. Additionally, it does not mandate a finding that plaintiff is limited to sedentary work. In fact, the ALJ properly relied on plaintiff's testimony that she was performing heavy exertional level

11

work on a part-time basis as support for a finding that she was not limited to sedentary work.

Further, plaintiff appears to argue that the ALJ failed "to build an accurate and logical bridge from the evidence to [his] conclusion" and that his conclusion is not supported by substantial evidence. *Dixon*, 270 F.3d at 1176. Unfortunately, as further evidence of the poor quality work product exhibited throughout plaintiff's submissions to this court, we cannot clearly decipher the basis for this argument. The statement "[the ALJ] never explained how or why plaintiff could perform work which required her to elevate her legs and stay off of them as much as possible" makes no sense. We assume plaintiff is arguing that the ALJ failed to build an accurate and logical bridge from the evidence in the administrative record to his conclusion that plaintiff could perform a substantial range of light work. It also appears plaintiff believes that the ALJ's conclusion is not supported by substantial evidence in the record.

This two-part argument must fail. As a basis for his conclusion, the ALJ cited to the only RFC assessment in the record, which was affirmed by another SSA physician and limited plaintiff to light level exertional work. The ALJ also cited the findings of plaintiff's treating physician at Little Company, which noted plaintiff's ability to ambulate without difficulty, including sitting, standing, and moving. Further, the ALJ cited to plaintiff's testimony and her medical records which support an RFC of light work. Accordingly, we find that not only has the ALJ built an accurate and logical bridge from the evidence to his conclusion, but his conclusion is supported by substantial evidence.

**ALJ's Credibility Determination**

Based on inaccurate case law citations[3], plaintiff argues that we must remand this case because the ALJ did not provide an "explicit and reasoned reflection of plaintiff's testimony", which is "essential for meaningful appellate review" of the ALJ's credibility determination. *Pl.'s Mem.* at 4-5. Under *Jens*, an ALJ's failure to specify which parts of a claimant's testimony lacked credibility and to provide an evidentiary basis for his credibility finding "does not demonstrate that [his] credibility finding is not supported by substantial evidence." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). "[Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference. We will reverse an ALJ's credibility determination *only if* the claimant can show it was patently wrong." *Id.* (citing *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (internal quotations and citations omitted) (emphasis added).

Plaintiff has failed to demonstrate that the ALJ's credibility determination was patently wrong. In the "findings" section of his decision, the ALJ concluded that plaintiff's "allegations regarding her limitations were not totally credible." In the body of his decision, the ALJ set forth his basis for that finding, making clear that although he credited plaintiff's testimony about her current abilities, he rejected her assertion that she was incapable of substantial gainful activity. Specifically, the ALJ cited plaintiff's testimony that, *inter alia*, she could walk six to eight blocks to her clients' homes, stand

---

[3]Plaintiff incorrectly cites *Aviles v. Heckler*, an opinion by District Court Judge Shadur, as a Seventh Circuit decision. 618 F. Supp. 1286 (D.C. Ill. 1985). She also provides an inaccurate citation to *Stephen v. Heckler*, 766 F.2d 284 (7th Cir. 1985), citing it as 766 F.2d 294. Further, plaintiff fails to provide pinpoint citations for either case.

13

for 30 minutes, sit for about five hours total per day, and lift up to 20 pounds. The ALJ found this testimony credible, however, he rejected plaintiff's assertion that she could not perform substantial gainful activity. Plaintiff has failed to show that this determination was patently wrong.

### ALJ's Application of the Guidelines

Finally, plaintiff argues that the ALJ committed reversible error in mechanically applying the medical vocational guidelines to her case. Like plaintiff's two previous arguments, this one also lacks merit. A sine quo non to the application of 20 C.F.R. §404.1563(a), which provides, *inter alia*, that the Commissioner "will not apply ... age categories mechanically in borderline cases," is a finding that plaintiff *has* a borderline case. *Hawkins v. Apfel*, 1998 WL 378421 *1 (N.D. Ill. 1998) (citing *Heckler v. Campbell*, 461 U.S. 458, 462 (1983). A borderline case exists "when there would be a shift in results caused by the passage of a few days or months." *Id.* n.3 (citing Social Security Ruling 82-46C). In other words, if plaintiff's impending birthday, approximately two months after the ALJ issued his decision, could have changed the ALJ's decision, §404.1563 precludes a mechanical application of the age categories.

Plaintiff's case could only have been considered borderline if the ALJ found that she was limited to no more than sedentary work. As stated above, the ALJ found that plaintiff could perform a substantial range of light work and was *not* limited to sedentary work. This decision was supported by substantial evidence in the record. Accordingly, plaintiff did not have a borderline case, mooting her argument regarding the propriety of the ALJ's mechanical application of the age categories.

14

## Conclusion

For the reasons set forth above, we conclude that the ALJ's findings are supported by substantial evidence, and that the ALJ built an accurate and logical bridge from the evidence in the administrative record to his conclusion that Brown was not disabled and could perform a significant number of jobs in the national economy. Accordingly, we **DENY** Brown's motion for summary judgment and **GRANT** the Commissioner's motion, affirming the decision of the ALJ. It is so ordered.

**ENTER:**

**MICHAEL T. MASON**
**United States Magistrate Judge**

Dated: July 27, 2004